

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/04/2012

In re: §
§
§
§   Case No. 11-39537-H4-7
STEPHAN BECHUCK, §
§
Debtor. §
§
§
§
§
§

# MEMORANDUM OPINION ON THIS COURT'S DENIAL OF THE CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY ADAIR & MYERS, P.L.L.C.
[Docket No. 22]

## I. INTRODUCTION

The Court writes this Memorandum Opinion on what has heretofore generally been a relatively routine request from a Chapter 7 trustee: namely, an application to employ counsel. The Court has heretofore been willing to approve fairly generic applications to employ such as the one presently pending in the case at bar. The Court, however, is no longer willing to do so.

On February 6, 2012, Randy Williams, the Chapter 7 Trustee (the Trustee) for the estate of Stephan Bechuck (the Debtor), filed an application to employ Adair & Myers, P.L.L.C., (the Firm) pursuant to 11 U.S.C. § 327[1] (the Application) [Doc. No. 22]. The Application specifically identifies two of the Firm's attorneys who will represent the Trustee: Thomas W. Graves (Graves) and Marc Douglas Myers (Myers). Upon review of the Application, the Court concludes that it should be denied without prejudice to refiling. This Court finds that the

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

Application is inadequate because it fails to include sufficient detail regarding the proposed attorneys' qualifications. This Memorandum Opinion will outline the relevant factors that must be included in a trustee's application for employment.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, and Constitutional Authority to Sign a Final Order

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and the general "catch-all" language of 28 U.S.C. §157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

Having concluded that this Court has jurisdiction over this matter, this Court nevertheless notes that *Stern v. Marshall*, 131 S. Ct. 2594 (2011) sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. Therefore, this Court has a duty to constantly inquire into its constitutional authority to enter a final order for any matter brought before this Court.

In the first instance, this Court concludes that its denial of the Application is not a final order because the denial is without prejudice to the refiling of another application seeking approval of the Firm that includes the information discussed in this Memorandum Opinion. *See*

2

*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136-37 (9th Cir. 1997) (holding that "when a district court expressly grants leave to amend, it *is* plain that the order is not final") (citing *Anastasiadis v. S.S. Little John*, 339 F.2d 538, 539-40 (5th Cir. 1964) (noting a dismissal with leave to amend is not a final appealable order)). Hence, this Court has the constitutional authority to enter the order denying the Application because this order is an interlocutory order.

Alternatively, even if the order denying the Application is somehow a final order, this Court nevertheless concludes that it has the constitutional authority to enter the order. The Court arrives at this conclusion because the facts in *Stern* are entirely distinguishable from those in the case at bar. In *Stern*, the debtor's counterclaim was based solely on state law; there was no Bankruptcy Code provision undergirding the counterclaim. *Id.* at 2611. Moreover, the resolution of the counterclaim was not necessary to adjudicating the claim of the creditor. *Id.* Under these circumstances, the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final judgment on the debtor's counterclaim. *Id.* at 2620.

In the case at bar, the Application is based solely on an express bankruptcy statute and an express bankruptcy rule: 11 U.S.C. § 327 and Bankruptcy Rule 2014. State law has no equivalent to this statute and this rule; they are purely creatures of the Bankruptcy Code. Accordingly, because the resolution of this matter is based on solely bankruptcy law, not state law, *Stern* is inapplicable, and this Court has the constitutional authority to enter a final order on the Application.

**B.      Requirements of a Chapter 7 Trustee in Retaining Counsel for the Estate**

A Chapter 7 trustee is the representative of the debtor's estate, and, as such, is entrusted with certain duties regarding the estate. 11 U.S.C. § 704(a); *In re McCombs*, 436 B.R. 421, 439 (Bankr. S.D. Tex. 2010). Under 11 U.S.C. § 327(a), the trustee may obtain approval to appoint

professionals to assist him in carrying out his duties as long as: (1) the professional does not hold an interest adverse to the estate; and (2) the professional is a disinterested person, as defined in 11 U.S.C. § 101(14). The Bankruptcy Code does not define the first requirement of § 327(a)—i.e. lack of adverse interest. Case law, however, defines the term "adverse interest" as: (1) the broad commercial and economic meaning of "adverse interest," and (2) "possessing or asserting any economic interest that would tend to lessen the value of the estate or create either an actual or potential dispute in which the estate is a rival claimant." *In re Red Lion, Inc.*, 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994). "Adverse interest also includes the attorney's economic and personal interests." *Id.* Congress intended the second §327(a) requirement—the disinterested person standard—"to prevent conflicts of interest without regard to the integrity of the person under consideration for employment." *Id.* In the case as bar, the Court concludes that the Firm has no adverse interest to the estate and that the proposed professionals, i.e. Adair & Myers, are disinterested.

But, this conclusion does not end the analysis. Aside from the requirements of § 327(a), the trustee must also focus on Federal Rule of Bankruptcy Procedure 2014(a). This rule provides an indication of the factors the trustee should consider in selecting an attorney to represent the estate. *See* Fed. R. Bankr. P. 2014(a); *In re Briscoe Enters., Ltd. II*, Bankr. No. 489-44447-MT-11, 1991 WL 303809, at *4 (Bankr. N.D. Tex. Aug. 16, 1991). Rule 2014(a) requires the trustee to include six categories of information in the application to appoint counsel: (1) the specific facts demonstrating the necessity for employing the attorney; (2) the name of the attorney the trustee wishes to hire; (3) the reasons for selecting the attorney; (4) the professional services the attorney will provide; (5) any proposed fee arrangement; (6) and, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in

interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014; *In re Kuykendahl*, 112 B.R. 847, 849 (Bankr. S.D. Tex. 1989). Additionally, case law places the burden upon the applicant "to come forward with facts pertinent to eligibility." *In re Huddleston*, 120 B.R. 399, 400 (Bankr. E.D. Tex. 1990).

This Court has substantial discretion to grant an application to employ a professional for the estate. *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010). In evaluating an application, this Court focuses on whether the proposed professional will maximize value for the estate, and the Court exercises its discretion accordingly. *In re Lyons*, 439 B.R. 401, 405 (Bankr. S.D. Tex. 2010). If an application lacks sufficient information to convince the Court that the proposed professional is the best choice to represent the estate, the Court has discretion to deny the application. *In re McConnell*, 82 B.R. 43, 44 (Bankr. S.D. Tex. 1987). Accordingly, in evaluating the Application in this case, the Court will examine whether it provides sufficient detail pursuant to Bankruptcy Rule 2014 about Graves and Myers for this Court to conclude that the retention of the Firm is the best choice to represent the estate. The Court concludes that it does not.

**C.    Reasons for the Denial of the Application.**

    1.    <u>The Application fails to disclose the history of success that Graves and Myers have had in past representations of the Trustee.</u>

To convince this Court of an attorney's qualifications, an application must include an explanation as to why the proposed attorney is the best choice to represent the Chapter 7 estate. *Huddleston*, 120 B.R. 399 at 400. Part of this explanation should include the attorney's history of success in past representation of the trustee. Here, the Application is limited to a single conclusory statement that Graves and Myers "have previously represented [the Trustee] in

5

numerous chapter 7 and chapter 11 proceedings." [Doc. No. 22]. There is no further explanation regarding their qualifications. While the Application indicates, in a generic sense, that these attorneys have experience with bankruptcy law, without further explanation, this statement is too vague. Further, the mere fact that these attorneys have previously represented the Trustee does not give the Court any indication whether they were successful in achieving the tangible, identifiable, and material benefits for the estate required by *In re Pro-Snax*, 157 F.3d 414, 426 (5th Cir. 1998). Thus, the Court is not left with a sound basis to grant the Application. Merely having experience does not instill confidence in this Court that the Trustee has actively sought out the best candidate to represent the estate in this particular case. Convincing this Court requires concrete examples of success, not general references to the attorneys' experience in bankruptcy.

  2. <u>The Application fails to discuss how often Graves and Myers have actually undertaken the specific tasks assigned to them in this particular case.</u>

An application for employment of a professional must include a section itemizing the scope of the assignment. *See* Fed. R. Bankr. P. 2014(a) (requiring an application to appoint professionals pursuant to § 327 to include the "professional services to be rendered"). Each enumerated item should include a detailed description of the attorney's assignment and duties.[2]

The Application satisfies this requirement; however, it lacks any discussion of how often Graves and Myers have actually undertaken these specific tasks in past representation of trustees. For example, one of the specific tasks set forth in the Application is that Graves and Myers will "analyze, institute, and prosecute actions regarding insider transactions and third party dealings." [Doc. No. 22]. The Application contains no discussion as to how many times have these two

---

[2] If, however, the trustee believes that too much specificity could alert putative defendants that a lawsuit is soon to be filed—thereby affording them an opportunity, for example, to quickly transfer money or other property out of the reach of the trustee—then the trustee is certainly entitled to file the application under seal. 11 U.S.C. § 107(b); Fed. R. Bankr. P. 9018.

attorneys have actually filed such adversary proceedings and prosecuted them to conclusion in a trial. This information is important because this Court needs to know whether these attorneys have the actual experience of obtaining a judgment in a full blown trial. The reason is simple: any attorney representing a defendant will drive a much harder bargain in settlement discussions if that attorney knows that counsel for the Trustee has never tried a dispute to its conclusion. This is key information to disclose because the Trustee has a fiduciary duty to maximize the value of the estate. 11 U.S.C. § 704(a); *In re Johnson*, 433 B.R. 626, 638 (S.D. Tex. 2010). This duty cannot be satisfied if the Trustee is allowed to retain counsel whose inexperience or inability to actually try a lawsuit (a) emboldens opposing counsel to make low ball settlement offers that the trustee's counsel, out of fear of trying a lawsuit, urges the trustee to accept; and (b) leads the trustee to settle cheaply out of fear that his counsel will utterly fail at trial.

    3.    <u>Other reasons for denial of the Application.</u>

           i.    *Personal relationships are not relevant factors that should be included within the Application.*

The Application sets forth that one reason, among others, to employ the Firm is that the Trustee and Graves "have a personal friendship, which has fostered [the Trustee's] confidence and trust in the Firm's competence to represent [the Trustee]." [Doc. No. 22]. The nature of the personal relationship between the Trustee and the proposed attorney is irrelevant as to the attorney's qualifications and should not be included in the Application. Indeed, the argument that the Application should be approved due to this personal relationship actually undermines the Application because it could be viewed as a conflict between the proposed attorney and the Trustee under Rule 2014. The selection of attorneys by Chapter 7 trustees has been described as a breeding ground for cronyism. *In Re Aladdin Petroleum Co.*, 85 B.R. 738, 740 (W.D. Tex. 1988); *In re Philadelphia Mortg. Trust*, 930 F.2d 306, 309 (3d. Cir. 1991); *see In re Arkansas*

7

*Co., Inc.*, 798 F.2d 645, 649 (3d. Cir. 1986) (stating that the Code "was designed to eliminate the abuses and detrimental practices . . . [such as] the cronyism of the 'bankruptcy ring' and attorney control of bankruptcy cases."). A personal friendship has no relevance to retention of a professional; what counts is demonstrated competence for the specific tasks germane to the Chapter 7 case so that the chances are maximized that a tangible, identifiable, and material benefit will be obtained for the estate. Stated differently, the Trustee has a fiduciary duty to bring in funds, not friends.

      ii.      *It is not in keeping with the spirit of the Trustee's fiduciary duty to the estate to allow the proposed attorneys to sign the Trustee's name with permission on a form application to employ.*

The Application is signed by Myers rather than by the Trustee himself. [Doc. No. 22]. The signature line reflects that the Trustee gave Myers permission to sign his name on the Application. [Doc. No. 22]. There is no question that the Trustee has the right to give Myers permission to sign his name; no rule is violated by so doing. There is, however, a hollowness to this approach. It reflects that the Application is nothing more than a form pleading on the Firm's system, and that whenever the Trustee decides to hire the Firm, it is this form which is spit out and filed—thereby creating the impression, if not the reality, that the Trustee is really not giving much thought on a case-by-case basis about why he wants to hire the specific attorneys he has chosen and why they are the most qualified attorneys for the relevant tasks in the present case. The Court believes that the Trustee, in order to fulfill his fiduciary duty to the estate, must take the time to make an independent judgment in each case as to whom he wants to hire and why he wants to hire a particular attorney or attorneys. Allowing a proposed attorney to file a form application signed by that attorney with permission of the Trustee creates the appearance that the

8

Trustee is not making a concerted effort to fulfill his fiduciary duty to choose the best attorney for the estate to maximize the value of its assets.

### III. CONCLUSION

The Court recognizes that this opinion will be unsettling to Chapter 7 trustees and some attorneys who have been representing these trustees over the past several years. The culture of Chapter 7 trustee representation has involved repeated retention of the same attorneys who have become accustomed to being retained out of friendship and reciprocal retention. This environment has led the trustees to lose focus of finding and seeking approval of the most aggressive and qualified attorneys who are willing to fight hard—both in and out of court—to maximize the value of the estate. The Court hopes that by requiring future employment applications to discuss the trial experience and success history of the attorneys whom they propose to hire—in addition to reviewing the hourly rates of these attorneys and other relevant factors—the Chapter 7 trustees in this District will hire attorneys who will generate maximum proceeds for distribution to creditors.

The Court also wants to disabuse any reader of this Memorandum Opinion that the Court is unwilling to approve employment of attorneys who have only been practicing for one or two years as opposed to twenty or thirty years. Recognizing that this Court has substantial discretion in approving applications to employ, three key factors in this Court's analysis of any application seeking to employ an attorney with only a few years' experience will be: (1) How well have those less experienced attorneys done on those tasks on which they have already worked in other cases—that is, have their services rendered a tangible, identifiable, and material benefit?; (2) Do the less experienced attorneys have the willingness and savvy to aggressively prosecute the

adversary proceeding and tenaciously negotiate with opposing counsel?; and (3) What are their hourly rates compared to the hourly rates of more experienced attorneys who are competing against them for trustee representation?[3] It is this Court's duty to make these assessments on a case-by-case basis, just as it is a trustee's duty to consider these issues on a case-by-case basis.

As noted previously, the Court is denying the Application without prejudice to the Trustee filing another application that provides the information in accordance with this Opinion. An order consistent with this Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed this 4th day of April, 2012.

Jeff Bohm
United States Bankruptcy Judge

---

[3] The Court does not want to suggest that it will not consider factors other than the three indicated herein. Indeed, there may well be other factors that need to be considered, depending upon the specific needs of the trustee. The Court expects the trustee to raise any other factors that he or she believes merit bringing to this Court's attention.